JAMES LONG, in equity, *vs.* MARY McKAY, and others.

Hancock.   Opinion January 15, 1892.

*Trust.   Husband and Wife.   Presumption.*
</div>

When a husband furnishes his wife money to be used in buying land, and she uses it for that purpose taking the title in her own name, there is no presumption that the wife holds the title in trust for the husband; but from the relationship of the parties, the presumption is that it was for her benefit.

The burden of proof is upon the husband to establish the trust by proof full, clear and convincing.

ON REPORT.

Bill in equity, heard on bill, answers and proofs, in which the plaintiff seeks a decree that the defendants, his children, may release to him two lots of land, the legal title of which they hold as heirs of their deceased mother, and which he claims that his children hold in trust for him by reason of his having furnished the money to purchase the land for him, she having taken the deed in her own name.

The facts are stated in the opinion.

*Wiswell, King and Peters*, for plaintiff.

*W. P. Foster*, for defendants.

LIBBEY, J.   The plaintiff claims to maintain this bill against the defendants on the ground that his deceased wife at the time of her death held the legal title to the place described in the bill, upon which he with his family had lived for many years, in trust for him, and he claims a decree against the defendants who are daughters and heirs of the deceased wife, requiring them to convey to him the title which they claim.

The facts as he alleges them in his bill are, briefly stated, as follows : In 1863, Alfred F. Adams and Samuel Adams, Jr., copartners under the firm name of Adams & Co., held a mortgage on a part of the premises in controversy, and at the April term of the Supreme Judicial Court in the county of Hancock, recovered judgment against the plaintiff for a sum other than the mortgage debt of five hundred and forty-seven dollars and ninety-six cents ; on the first day of June of that year they levied the execution which they had obtained upon said judgment upon both pieces of the lands described in the bill, receiving seizin thereof; that in March or April, 1864, he enlisted in the army of the United States, receiving as bounty the sum of four hundred dollars, which he gave to his wife to be used to purchase the place of Adams & Co., and as he alleges to take a deed of the title to him ; that in 1865, when he was discharged from the service he delivered to his wife another sum received as compensation for his services, amounting, with the sums which he furnished her in 1864, to more than six hundred dollars ; that on the seventeenth day of June, 1864, after the title of Adams & Co., to the premises had become absolute, his wife purchased of them the title to the premises, paying therefor the sum of six hundred dollars, the money which he had furnished her for that purpose, and took a deed in her own name, which was duly recorded ; and he alleges that he did not know the fact that she had taken the deed in her own name for several years afterwards.

The defendants in their answer, deny the material allegations in the bill, and allege that the moneys which the plaintiff furnished to his wife were given to her to enable her to purchase the place of the Adamses for a home for herself and the family ; that the plaintiff knew that his wife took the title in her own name and consented to it, and made no effort to induce her to convey to him the title during her lifetime.

The burden is upon the plaintiff to establish the trust by proof full, clear and convincing. *Dudley* v *Bachelder*, 53 Maine, 403 ; *Burleigh* v. *White*, 64 Maine, 23.

Proof that the plaintiff furnished his wife with the money with

which to make the purchase creates no presumption of trust; but the presumption arising from it, considering the relationship of the parties, is that it was furnished for her benefit. *Stevens* v. *Stevens*, 70 Maine, 92.

The proof furnished by the plaintiff to overcome this presumption and establish the trust in his wife, comes almost exclusively from him. The defendants are heirs, and whatever title they have they acquired as heirs of their deceased mother. It is claimed by the defendants that the plaintiff is not a competent witness to testify to support his case except in relation to such matters as the defendants have testified to. We do not deem it necessary to discuss this question and determine to what extent the plaintiff is a competent witness, because we are of opinion that, taking all the testimony in the case and considering it in the light of all the surrounding facts and circumstances, it is not sufficient to convince us that there was an agreement of trust on the part of the wife.

In 1864, on the plaintiff's own statement, he was a poor man, his homestead held by Adams & Co. by his mortgage, and the levy they made in 1863,—the title to become absolute in them on the first day of June, 1864. He was considerably in debt at that time to other parties. It does not appear that he possessed any other property to any amount. He determined to enlist in the army. He then had a family of a wife and seven children, the oldest one seventeen years old. He was for a time, at least, to leave his wife in the care of the family with but very little means of support, and he gave to her the money to be used in the purchase of the homestead. The uncertainty of his life was increased by his enlistment in the army. He might not return. Is it unreasonable to infer that his desire was that the money, which he received from his enlistment, should go to create and maintain a home for his wife and family if he should not return, and for himself as well, if he did? The title had just been taken from him by Adams & Co. He had other creditors. If it was purchased back in his own name, it would be subject to attachment and levy by the other creditors, and his wife and children might be deprived of a home. We think the theory that the

purpose and agreement was that the wife should take the title in her own name the more reasonable one.  She waited until after the title became absolute in Adams & Co., and then made the purchase and took the deed in her own name, which was duly recorded.  True, the plaintiff alleges that he did not know the fact that the title was taken by his wife in that way for several years afterwards.  We cannot give credit to that statement; for in 1869, only four years after he returned from the army, his wife conveyed a portion of the premises to Haynes and others, and he signed the deed with her relinquishing what was supposed to be a right of dower.  He then knew that his wife had the title, if never before.  It does not appear that he made any protest against her holding the title at that time; but his act is inconsistent with any other belief than that she held the title and it was necessary for him to relinquish what was supposed to be a right of dower.

The evidence tends to show that the matter was talked over by the husband and wife at different times during her lifetime. She died in May, 1880.  The plaintiff instituted no proceedings against her to require her to convey to him the title, and he delayed bringing the suit for nearly six years after her death. While we do not deem it necessary to determine the question raised by the defendants of the effect of the plaintiff's laches in asserting his claim of title for so many years as a bar to the maintenance of this bill, we think the delay is entitled to some significance as evidence in connection with what is disclosed.

Carefully considering the testimony of the plaintiff and the evidence produced by the defendants tending to contradict him and establish the theory that they set up in their answer, and applying to it the probabilities under all the circumstances disclosed, with the fact that the wife during her lifetime claimed that she rightfully held the title, and that the plaintiff delayed setting up his claim until after her death, when she cannot speak in regard to the transactions, we are not satisfied that the plaintiff has proved the trust that he claims by full, clear and convincing proof.                    *Bill dismissed.*

PETERS, C. J., WALTON, VIRGIN, EMERY and WHITEHOUSE, JJ., concurred.