BENJAMIN F. GRAY, in equity,
*vs.*
ANDREW P. JORDAN, and others.

Hancock. Opinion January 16, 1895.

*Equity. Resulting Trust. Husband and Wife.*

Equity deals with the substance of things regardless of form or methods.

While an equitable estate does not easily arise out of legal forms, but where the legal forms are grounded upon equitable substance, and the rules of law do not forbid the proof, the equity remains substantial, and may be transformed into legal interests whenever chancery sees fit to so decree.

A husband bought a farm and had it conveyed to his wife, with the intention of paying for it himself. The wife gave her notes secured by a mortgage of the land to secure the payment of the farm, and the husband afterward paid the notes out of his own money in pursuance of an original intention, not intending the conveyance, or the payment, to be a gift to his wife. *Held;* That the wife took the fee charged with a trust in favor of the husband.

ON APPEAL.

Upon the hearing in the court below on bill, answers and testimony, a decree was made dismissing the bill; and the plaintiff appealed.

The facts in the case as stated in the decree are as follows:

"Lemuel D. Jordan was formerly the owner in fee of the land described in the bill. In November, 1880, Benj. F. Gray, the complainant, went to Mr. Lemuel D. Jordan and negotiated for the purchase of the land. Mr. Gray and Mr. Jordan agreed upon the terms of the purchase and conveyance. The price fixed was $200. Nothing appears to have been paid down at the time. The deed of conveyance was made by Mr. Jordan to Mary Jane Gray, the wife of Mr. Gray. Mary Jane Gray gave back two notes of $100 each on six and twelve months, and secured the same by a mortgage of the land dated the same day as the deed to her. It is doubtful whether these notes were also signed by B. F. Gray. Mr. Jordan has an impression that they were. The mortgage, however, was signed by Mrs. Gray alone, and does not mention Mr. Gray as a co-signer of the notes.

"Mr. Gray did the business and it was at his request that the deed was made to Mrs. Gray. Mr. Gray paid nothing at the time, but entered upon the land and cleared it, (taking the wood and timber) and made extensive improvements. Sometime afterward, presumably in the fall of 1886, for that is the date of the discharge of the mortgage, Mr. Gray paid the notes and Mr. Jordan delivered them to him. These notes were none of them paid before maturity.

"Mrs. Gray, on several occasions, spoke of this parcel of land as belonging to Mr. Gray. He seems to have had the exclusive possession and control of it. I find, therefore, that Mr. Gray sometime after the conveyance to Mrs. Gray, paid

her notes given for the land out of his own money, and that he did this in pursuance of an original intention.   I further find that he did not intend the conveyance or the payment to be a gift to his wife." . . .

*Hale and Hamlin,* for plaintiff.

*A. W. King,* for defendants.

A resulting trust must arise, if at all, at the time the legal title is taken.   Payment of the purchase money must have been made, or an obligation to pay incurred, at the time of the purchase.   1 Perry on Trusts, § 133 ; 2 Pom. Eq. § 1037 ; *Neill* v. *Keese,* 5 Tex. 23 ; S. C. 51 Am. Dec. note, p. 755.

But, if the subsequent payment be made in pursuance of an original intention and agreement ; if it be made in discharge of an obligation assumed and understanding had between the trustee and *cestui que trust* at the time of the original purchase, then it is not a subsequent independent payment, but relates to and forms part of the original transaction and the resulting trust may be established.   *Buck* v. *Pike,* 11 Maine, 9 ; *Dudley* v. *Bachelder,* 53 Maine, 403 ; *Burleigh* v. *White,* 64 Maine, 23 ; *Jackson* v. *Stevens,* 108 Mass. 94 ; *McDonough* v. *O'Niel,* 113 Mass. 92 ; *Boyd* v. *McLean,* 1 Johns. Ch. 582.

If the original payment, either in money or notes, be made by or in behalf of the party claiming the trust ; or if the original payment be made as a loan of money or credit to the party claiming the trust, he at the same time assuming the obligation of repaying the loan of money or discharging the obligation given for the purchase, then, upon the repayment of the money or discharge of such obligation, although at a time subsequent to the original transaction, the trust can be enforced which became fixed upon the property at the time of purchase.   *Perry* v. *Perry,* 65 Maine, p. 401 ; *Farnham* v. *Clements,* 51 Maine, 428 ; *Dudley* v. *Bachelder,* 53 Maine, 403, 409 and case there cited in Vermont ; *Bailey* v. *Hemenway,* 147 Mass. p. 329 ; *Richards* v. *Manson,* 101 Mass. p. 487.

To establish a resulting trust "full proof, of a high degree of force and weight in the testimony offered" is required.   *Whitmore* v. *Learned,* 70 Maine, p. 285.

Where the transaction is between husband and wife it would seem that no relaxation, at least, in the proof required to overcome the presumption that the intention was for the wife to hold the property as hers and not as trustee, ought to be allowed.

The undisputed facts in the case at bar are that the property was purchased in the name of the wife and her own note given for the full consideration secured by a mortgage on the same property; that the plaintiff did not at the time pay any money, or become party to any of the notes given.

Some years afterward the notes were paid as appears by the discharge of the mortgage, and from the testimony of Jordan it appears that the plaintiff paid over to him the money due on the notes.

To establish a resulting trust it should appear that the *cestui que trust*, at the time the conveyance was made paid the consideration. It need not have been, perhaps, in money, but whatever was paid, whether notes or money, should have been unequivocally his. If the notes of another person were used they must have been loaned to him and he must have in some legal and binding way obligated himself at the time to pay the notes if notes were given. *Dudley* v. *Bachelder*, and cases, *supra*.

Where the grantee gives his note secured by a mortgage on property for the full consideration, on which notes the *cestui que trust* is not a party either as maker, indorser, surety or guarantor, or in any other way no resulting trust would arise. *Fowke* v. *Slaughter*, 3 A. K. Marshall, 56; S. C. 13 Am. Dec. 133.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, STROUT, JJ.

HASKELL, J.　Bill in equity by a husband against the administrator and heirs-at-law of his deceased wife, to declare a resulting trust in his favor of a farm purchased by him and conveyed to his wife.

The bill was dismissed below, and the cause comes up on appeal. The presiding justice who tried the cause below, found the following facts: "I find therefore that Mr. Gray [the plaintiff], sometime after the conveyance to Mrs. Gray, paid her notes given for the land out of his own money, and that he did this in pursuance of an original intention. I further find that he did not intend the conveyance or the payment to be a gift to his wife." The evidence amply supports this finding, and the question comes, do these facts create a fee simple in the wife, or a fee charged with a trust for the husband? The conveyance was made to the wife, without any payment by her other than her notes, which were paid by the husband "in pursuance of an original intention." "He did not intend the conveyance or the payment to be a gift to" her. How, then, could she get the estate? It was not given to her; and it was paid for by the husband, according to the "original intention." These facts clearly create a resulting trust. The husband bought the farm and had it conveyed to his wife, with the intention of paying for it himself. This intention he performed. The giving of notes and a mortgage by the wife, with intention that they were to be paid by the husband, was merely a convenient method by which he might purchase the farm. The purchase was his. The payments were his. The farm was his, subject, perhaps, to any equitable lien that might attach to it while the notes of the wife were unpaid.

Equity deals with the substance of things regardless of form or methods. To be sure, an equitable estate does not easily arise out of legal forms, but where the legal forms are grounded upon equitable substance, and the rules of law do not forbid the proof, the equity remains substantial, and may be transformed into legal interests whenever chancery sees fit to so decree.

In the case at bar the substance of the transaction was, a conveyance to the husband and his notes, indorsed by his wife, secured by mortgage of the farm, given in payment therefor. Until she paid something on the notes she had no interest in the farm. When she might do so, she would take an equity in the mortgage subject to the prior claim of the mortgagee. The

plaintiff's equity is the underlying substance of the transaction, clothed in legal forms; but with intent and purpose all the while to preserve it, and not choke it. The purchase is found and shown to have been for the plaintiff, and this may be shown by parol; a trust therefore results in his favor. *Buck* v. *Pike*, 11 Maine, 9. That case shows the distinction between *Boyd* v. *McLean*, 1 Johns. Ch. 582, and *Battsford* v. *Burr*, 2 Johns. Ch. 405, upon which the dictum in *Farnham* v. *Clements*, 51 Maine, 428, is grounded, although the case was rightly decided upon other grounds. *Dudley* v. *Bachelder*, 53 Maine, 403; *Burleigh* v. *White*, 64 Maine, 23; *Perry* v. *Perry*, 65 Maine, 399; *McDonough* v. *O'Niel*, 113 Mass. 92. *Bourke* v. *Callanan*, 160 Mass. 195, is not in conflict with the doctrine here laid down. Defendant's shield has been fairly pierced, "not with weapons drawn from the armory of the strict law," but by the chancellor's unerring lance.

*Bill sustained with costs. Decree below reversed.*